## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ALTICOR INC., a Michigan corporation, and AMWAY CORP., a Virginia corporation,<br><br>      Plaintiffs,<br>vs.<br><br>GREEN LIFE NYC INC., a New York corporation, and HUIDAN ZHOU, a natural person, both doing business as "green-life-store" on the website www.amazon.com and as "green-life-forever" on the website www.ebay.com,<br><br>      Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 USC § 1114; 15 USC § 1125(a); 15 USC § 1125(c); TORTIOUS INTERFERENCE, AND RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Alticor Inc. and Amway Corp. (collectively, "Plaintiffs") bring this action against Defendant Green Life NYC Inc ("Green Life NYC Inc") and Defendant Huidan Zhou ("Zhou") (both doing business as "green-life-store" on the website www.amazon.com ("Amazon") and as "green-life-forever" on the website www.ebay.com ("eBay")) (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); common law trademark infringement and unfair competition; unfair competition in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq.*; and tortious interference with existing contracts. These claims arise from Defendants' misappropriation of Plaintiffs' trademarks in connection with Defendants' unlawful and unauthorized sale of materially different and non-genuine Amway products on the Internet to unwitting customers. In support of their complaint, Plaintiffs allege as follows:

## PARTIES

1.      Alticor Inc. ("Alticor") is a corporation, organized under the laws of the State of Michigan, with its principal place of business located in Ada, Michigan. Alticor is the parent company of Amway Corp. and the owner of the Amway family of trademarks and all associated intellectual property rights.

2.      Amway Corp. ("Amway") is a corporation, organized under the laws of the State of Virginia, with its principal place of business located in Ada, Michigan.

3.      Green Life NYC Inc is a corporation, organized under the laws of the State of New York, with its principal place of business located at 1428 67th Street, Apt. # 1B, Brooklyn, New York 11219. Upon information and belief, Green Life NYC Inc operates or assists in the operation of an online storefront currently called "green-life-store" on Amazon and of a storefront currently called "green-life-forever" on eBay.

4.      Zhou is a natural person who, upon information and belief, resides at 1428 67th Street, Apt. # 1B, Brooklyn, New York 11219 and may be served with process there or anywhere else he may be found. Upon information and belief, Zhou operates or assists in the operation of an online storefront currently called "green-life-store" on Amazon and of a storefront currently called "green-life-forever" on eBay.

## JURISDICTION

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367. Plaintiffs' federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and their claims arising under the laws of the State of Michigan are substantially related to their federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

6.     This Court has personal jurisdiction because the Defendants have expressly aimed tortious activities toward the State of Michigan and established sufficient minimum contacts with Michigan by, among other things, advertising and selling infringing Amway products to consumers within Michigan through multiple highly interactive commercial websites, through the regular course of business, with the knowledge that Plaintiffs are located in Michigan and are harmed in Michigan as a result of Defendants' sales of infringing Amway products to Michigan residents and residents of other states.  Plaintiffs' claims arise out of Defendants' sales of infringing Amway products to Michigan residents.

## VENUE

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district or, in the alternative, because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

**Plaintiffs And Their Trademarks**

8.     Plaintiffs are worldwide leaders in providing nutrition, beauty, bath and body, cookware, household, and other products to consumers under various brands, including Amway®, Nutrilite®, and Artistry® (collectively, "Amway products"). Plaintiffs permit Amway products to be sold to U.S. consumers only through Amway.com and through Amway Independent Business Owners ("IBOs").

9.     Plaintiffs devote a significant amount of time, energy, and resources toward protecting the value of their brands, products, name, and reputation.  By distributing products exclusively through their own website and through IBOs, Plaintiffs ensure the safety, well-being,

and satisfaction of consumers and maintain the integrity and reputation of the Amway family of brands. IBOs provide users of Amway products with explanation and guidance about the safe and proper use of Amway products. IBOs are also required by contract to exercise strict quality control requirements over the products they sell to consumers. In the highly competitive nutrition and household product market, quality and customer service are a fundamental part of the consumer's decision to purchase a product.

10.     To promote and protect the Amway family of brands, Alticor has registered numerous trademarks with the United States Patent and Trademark Office. These trademarks include, but not are limited to: AMWAY® (U.S. Trademark Registration Nos. 716,672, 847,709, 4,031,832, 4,199,852, 4,289,794, and 4,481,517), NUTRILITE® (U.S. Trademark Registration Nos. 402,891, 689,389, 2,145,912, 3,535,340, 4,748,189, and 4,478,190), and ARTISTRY® (U.S. Trademark Registration Nos. 856,184, 1,505,505, 1,519,877, and 4,645,525), (collectively, the "Amway Registered Trademarks").

11.     Alticor has licensed the Amway Registered Trademarks to various subsidiaries, including Amway.

12.     The registration for each of the Amway Registered Trademarks is valid, subsisting, and in full force and effect.

13.     Plaintiffs actively use and market all of the Amway Registered Trademarks in commerce.

14.     Due to the quality and exclusive distribution of Amway products, and because Plaintiffs are recognized as the sources of high quality products, the Amway Registered Trademarks have substantial value.

**Plaintiffs Exercise Strict Quality Controls Over the Production and Distribution of Amway Products and Provide a Guarantee for Products Purchased from IBOs**

15.     To maintain quality controls over Amway products, Plaintiffs allow Amway products to be sold in the United States only by Plaintiffs themselves (through Amway.com) or by IBOs.  Plaintiffs' ability to maintain quality controls is essential to the integrity and safety of Amway products, as well as to the value of the Amway Registered Trademarks and the satisfaction of consumers.

16.     IBOs must enter into contracts with Amway to be permitted to sell Amway products.  These contracts authorize IBOs to sell Amway products only in certain channels, and require IBOs to provide various customer services and exercise various quality controls over Amway products (collectively, the "Amway Rules").  Amway enforces the quality controls established in the Amway Rules and its contracts with IBOs.

17.     The Amway Rules require, among other customer services and protections, that IBOs provide customers with vital information regarding Amway products and their uses.  This person-to-person interaction between IBOs and their customers allows for explanation and guidance on the safe and proper use of Amway products.  To this end, the Amway Rules prohibit IBOs from selling or displaying Amway products in retail establishments.

18.     Under the Amway Rules, IBOs must also provide personal services to customers concurrently with and after their sales.  IBOs have access to literature and other educational materials developed to advise customers on each product's purpose, features, and benefits.  IBOs are therefore uniquely qualified to explain best practices for safe and optimal use of Amway products, and these services of course cannot be provided by non-IBOs who sell Amway products.

19. IBOs are also trained and instructed to present only complete and truthful information about Amway's products and services, and must refer only to the statements permitted in authorized literature. It is essential to consumer well-being and Plaintiffs' reputation that customers are able to make fully informed decisions about whether to purchase Amway products and which products to purchase.  The Amway Rules prohibit IBOs from providing misleading or false information to customers, and Amway monitors its IBOs to ensure that IBOs do not violate these prohibitions.

20. To ensure that customers receive products of the quality they have come to expect from Plaintiffs, IBOs are prohibited from altering any Amway product, label, or accompanying literature.  IBOs may sell Amway products only in their original packaging and formulation to prevent customer confusion and erosion in the quality and value of Amway products.  IBOs must explain to customers that Amway products are safest when used as directed on the product labels.

21. IBOs must also follow storage and handling requirements for all Amway products, including storing products in cool, dry place and ensuring that products are never exposed to freezing temperatures.  Numerous Amway products are permanently damaged if they are allowed to freeze.

22. Amway tracks all purchases of Amway products from Amway.com and from IBOs, so that it can conduct a recall or disseminate other important consumer safety information in the event that a quality control issue arises.  Amway is not able to track products that are sold outside of authorized channels, however, and would be unable to alert customers who purchased from unauthorized sellers if a quality issue arose.

23.     For all of these reasons, Plaintiffs limit third party sales of their products to IBOs who have access to, and must follow, the Amway Rules.  By so limiting their sales, Plaintiffs are able to protect the safety of their consumers and maintain the integrity and reputation of the Amway family of brands.

24.     Amway also provides customers who purchase Amway products through authorized chains of distribution with the Amway Satisfaction Guarantee ("Satisfaction Guarantee"), which allows customers who are not completely satisfied with an Amway product to receive a refund or product replacement within 180 days of purchase.  Customers who purchased Amway products from IBOs are given a full refund, credit, or a product exchange by the IBO from whom they purchased their product.  Customers who purchased products from Amway.com may return their product to Amway, in accordance with return instructions on their product's official packing slip.

25.     Amway offers the Satisfaction Guarantee only for products that were sold by sellers that are subject to Plaintiffs' quality controls and have agreed to follow their quality controls.  Because non-IBOs are not subject to Plaintiffs' quality controls and Amway can therefore not ensure the quality of products sold by non-IBOs, the Satisfaction Guarantee is not available for Amway products purchased from any third party who is not an IBO.

26.     As an additional measure to maintain the quality of Amway products and prevent the confusion that can result from anonymous sales on the Internet, Amway prohibits IBOs from selling Amway products on the Internet unless they use an authorized Amway.com platform.  Amway strictly prohibits IBOs from selling products on Amazon, eBay, and other independent, unauthorized websites.

27.     Amway also prohibits IBOs from selling Amway products to persons or entities that IBOs know, or have reason to know, are going to resell those products on the Internet (including on Amazon and eBay).   The purpose of this restriction is to ensure that Amway products are sold to consumers only by Plaintiffs themselves or by IBOs who are subject to and follow Plaintiffs' quality controls.

**Amway's Discovery of Defendants' Sales of Amway Products on the Internet**

28.     Because the unauthorized sale of Amway products over the Internet threatens the safety of consumers and the reputation and goodwill associated with the Amway Registered Trademarks, Amway polices the sales of its products online.

29.     Through these efforts, Amway discovered that products bearing the Amway Registered Trademarks were being sold on Amazon through a storefront called "green-life-store" and on eBay through a storefront called "green-life-forever" (collectively, the "Storefronts").

30.     Amway conducted an investigation to determine the identities of the individual(s) or entity(ies) that were operating the Storefronts.   Through its investigation, Amway learned that the operator(s) of the "green-life-store" Amazon storefront provided the following contact information to Amazon: "huidan zhou, 1428 67TH STREET APT 1B, BROOKLYN, NY, 11219-6280 US."   Amway also learned that the operator(s) of the "green-life-forever" eBay storefront provided the following user information to PayPal, a payment system used by eBay: "Huidan Zhou."   The operator(s) of the "green-life-forever" eBay storefront also identified "green life nyc inc" as affiliated "business information" for the storefront and listed 1428 67th Street, Apt. 1B, Brooklyn, NY 11219 (the "Brooklyn Address") as the contact address.

31.     Through further investigation, Amway determined that a natural person, Huidan Zhou, resides at the Brooklyn Address.   Amway also discovered that there is a corporation

organized under New York law called "Green Life NYC Inc" that lists the Brooklyn Address as its principal place of business and its designated address for service of process.

32.     Based on these facts, Amway concluded that Zhou and Green Life NYC Inc are joint operators of the "green-life-store" and "green-life-forever" storefronts and are responsible for the conduct complained of herein.

33.     Through further investigation, Amway discovered that Zhou was at one time an Amway IBO.  Zhou signed an agreement to become an IBO in October 2014 but terminated his status as an IBO in April 2015.  Zhou has not been an Amway IBO since April 2015.

34.     Green Life NYC Inc is not and has never been an Amway IBO.

35.     Defendants have sold a high volume of Amway products through the Storefronts. In the six months prior to the date this action was filed, Defendants sold approximately 11,000 products bearing Plaintiffs' NUTRILITE® trademark through the Storefronts for total sales of approximately $493,000.

36.     As of the date of filing, Defendants are continuing to sell a high volume of Amway products through the Storefronts.

37.     In an effort to avoid detection by Plaintiffs, Defendants have occasionally changed the names of their Storefronts.  Defendants' storefront on Amazon was previously called "lovebestlife" before Defendants changed the name of the storefront to "green-life-store." Similarly, Defendants' storefront on eBay was previously called "bluemoonsave," "ilovebluemoon," "tim95nxscau," and "healthyandbeautylife" before Defendants adopted the current name—"green-life-forever"—they are using for their eBay storefront.

38.     Although Defendants can change the name of their Amazon storefront at will, each Amazon storefront is assigned a "Merchant ID number" that does not change over time

9

(even when the formal "name" of the storefront is changed).  The Merchant ID number for Defendants' Amazon storefront is A3BRS3ENAR9G1Z.  Even if Defendants change the name of their Amazon storefront again, their storefront can be accessed at the following link that includes the Merchant ID number for their storefront:

    a.   https://www.amazon.com/sp?seller=A3BRS3ENAR9G1Z

39.    Similarly, Defendants' eBay storefront can be accessed at the following link even if Defendants again change the name of their eBay storefront contemporaneously with or after the date this action is filed:

    a.   https://www.ebay.com/str/bluemoonsave

**Defendants' Illegal Sale of Amway Products**

40.    Defendants, without authorization from Plaintiffs, have sold—and are currently selling—products bearing the Amway Registered Trademarks through various channels, including through storefronts on Amazon and eBay.  Upon information and belief, Defendants are also selling Amway products through additional storefronts and channels beyond those that are referenced in this Complaint.

41.    The Amway products that Defendants are selling are not genuine Amway products because, among other reasons, they are ineligible for the Satisfaction Guarantee and they are not subject to and do not abide by Plaintiffs' quality control procedures that IBOs must follow.

42.    The Satisfaction Guarantee is a material element of genuine Amway products. Consumers considering whether to purchase Amway products would find it relevant to their purchasing decision to know whether the product they are purchasing is eligible for the Satisfaction Guarantee.

43.     As a result, through their unauthorized use of the Amway Registered Trademarks, Defendants have misled—and continue to mislead—consumers into believing they are purchasing products with the same customer benefits and quality controls as genuine Amway products.  In reality, however, the products sold by Defendants are materially different from genuine and authentic Amway products.

44.     As a former Amway IBO, Zhou is well aware that Plaintiffs allow Amway products to be sold only by IBOs who are required to provide customer services and exercise quality controls over Amway products.  Zhou also knows that Plaintiffs prohibit the sale of Amway products on independent, unauthorized websites including Amazon and eBay. Accordingly, by illegally selling non-genuine, infringing products on Amazon and eBay despite knowing the sales are illegal and prohibited by the Amway Rules, Defendants are acting intentionally, willfully, and maliciously.

45.     As a former Amway IBO, Zhou also knows that Amway is located in Michigan and is harmed in Michigan as a result of Defendants' illegal sales over the Internet of products bearing the Amway Registered Trademarks.

46.     Upon information and belief, through their storefronts on the highly interactive Amazon and eBay websites, Defendants accept and fulfill orders from Michigan residents for products bearing the Amway Registered Trademarks and cause infringing products bearing the Amway Registered Trademarks to be shipped to persons located in Michigan through the regular course of business.

**Defendants Are Tortiously Interfering With Amway's Contracts With IBOs**

47.     As discussed, Plaintiffs sell Amway products to U.S. consumers exclusively through Amway.com and through IBOs.

48.     Amway has entered into contracts with all of its IBOs that prohibit IBOs from selling Amway products to persons or entities that IBOs know, or have reason to know, are going to resell the products on the Internet.

49.     Defendants have sold and are continuing to sell a very high volume of Amway products on the Internet.  In light of the extent of Defendants' sales of Amway products, it is plausible and can reasonably be inferred that Defendants must have purchased the Amway products they have resold from one or more IBOs. Thus, upon information and belief, Defendants have purchased Amway products from IBOs for the purpose of reselling them on the Internet.

50.     Amway's contracts with its IBOs are a specific class of contract Defendants are causing IBOs to breach when they purchase Amway products from IBOs.  Although Plaintiffs do not yet know which specific IBO(s) have breached their contracts with Amway—and indeed cannot learn this information until they are able to take discovery from Defendants in this action—Defendants know how they obtained the Amway products they have resold and are on notice of the basis for Plaintiffs' claim of tortious interference with contracts.

51.     By purchasing Amway products from IBOs and then reselling them on the Internet, Defendants caused and induced IBOs to breach their contracts with Amway.

52.     Defendants have known that Amway's contracts with IBOs prohibit IBOs from selling Amway products to third parties, such as Defendants, who the IBOs know or have reason to know are going to resell the products on the Internet.

53.     Defendants have known of this prohibition, among other reasons, because Zhou used to be an IBO and agreed to follow the Amway Rules, including the requirement that IBOs

may not sell Amway products to persons or entities that IBOs know, or have reason to know, are going to resell the products on the Internet.

54.     Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with Amway's contracts with its IBOs by inducing IBOs to breach their contracts and sell Amway products to Defendants that Defendants resold on the Internet.

55.     Defendants were not justified in their conduct.  Defendants purchased Amway products from IBOs—and in so doing, instigated a breach of the IBOs' contracts with Amway— so that Defendants could unlawfully infringe upon and materially damage the value of the Amway Registered Trademarks by reselling the products on the Internet.

56.     Defendants were not parties to the contracts that they caused IBOs to breach.

57.     If Plaintiffs learn through discovery that Defendants somehow have not obtained any of the products they have resold from any IBO, Plaintiffs will dismiss their claim for tortious interference with existing contracts.

**Zhou's Liability**

58.     Upon information and belief, Zhou is in control of, a principal of, and primarily responsible for Green Life NYC Inc and its actions.

59.     Plaintiffs assert claims against Zhou in both his individual capacity as well as his capacity as a corporate officer of Green Life NYC Inc.

60.     Until they conduct discovery, Plaintiffs cannot determine whether Zhou in his individual capacity, Green Life NYC Inc, or both operate the Storefronts.

61.     Alternatively, upon information and belief, Zhou directs, controls, ratifies, participates in, or is the moving force behind the sales of infringing Amway products by Green

Life NYC Inc. Accordingly, Zhou is personally liable for infringing activities of Green Life NYC Inc without regard to piercing the corporate veil.

62. Alternatively, on information and belief, Green Life NYC Inc follows so few corporate formalities and is so dominated by Zhou that it is merely an alter ego of Green Life NYC Inc. This is reflected, in part, by the fact that the publicly-listed principal place of business of Green Life NYC Inc is the same address as Zhou's home residence. Accordingly, Plaintiffs are entitled to pierce the corporate veil of Green Life NYC Inc and hold Zhou personally liable for the infringing activities of Green Life NYC Inc.

**Plaintiffs Have Suffered Substantial Harm As A Result of Defendants' Conduct**

63. As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their quality control procedures, to the Amway Registered Trademarks, and to the goodwill associated with the Amway family of brands.

64. Defendants' conduct is knowing, intentional, willful, malicious, wanton, and contrary to law.

65. Plaintiffs are entitled to injunctive relief because Defendants will otherwise continue to unlawfully sell products bearing the Amway Registered Trademarks that are materially different from genuine Amway products sold by IBOs and do not abide by Amway's quality controls, thereby compromising Plaintiffs' quality controls. Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to the goodwill associated with the Amway family of brands and will likely cause Plaintiffs to lose business.

## COUNT I
### Trademark Infringement
### 15 U.S.C. §§ 1114 and 1125(a)

66.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

67.     Plaintiffs are the owner and licensee of the Amway Registered Trademarks.

68.     Alticor has registered the Amway Registered Trademarks with the United States Patent and Trademark Office.

69.     The Amway Registered Trademarks are valid and subsisting trademarks in full force and effect.

70.     Defendants have willfully and knowingly used, and continue to use, the Amway Registered Trademarks in commerce for the purpose of selling products on the Internet without Plaintiffs' consent.

71.     The products that Defendants sell bearing the Amway Registered Trademarks are not authorized for sale by Plaintiffs.

72.     Defendants' use of the Amway Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Amway Registered Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs.

73.     Defendants' use of the Amway Registered Trademarks in connection with their sale of Amway products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Amway products.

74.     The products sold by Defendants are not, in fact, genuine and authentic Amway products.  The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to and do not abide by Amway's quality control procedures that IBOs must follow.

75.     Defendants' unauthorized use of the Amway Registered Trademarks has materially damaged the value of the Amway Registered Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Amway Registered Trademarks.

76.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

77.     Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Amway Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

78.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

79.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Amway Registered Trademarks.

**COUNT II**
**Unfair Competition**
**15 U.S.C. § 1125(a)(1)(A)**

80.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81.     Plaintiffs are the owner and licensee of the Amway Registered Trademarks.

82.     Alticor has registered the Amway Registered Trademarks with the United States Patent and Trademark Office.

83.     The Amway Registered Trademarks are valid and subsisting trademarks in full force and effect.

84.     Defendants have willfully and knowingly used, and continue to use, the Amway Registered Trademarks in commerce for the purpose of selling Amway products on the Internet without Plaintiffs' consent.

85.     The products that Defendants sell bearing the Amway Registered Trademarks are not authorized for sale by Plaintiffs.

86.     Defendants' use of the Amway Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Amway Registered Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs when they are not.

87.     Defendants' use of the Amway Registered Trademarks in connection with their sale of Amway products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Amway products when they are not.

88.     Defendants' unauthorized sale of products bearing the Amway Registered Trademarks and unauthorized use of the Amway Registered Trademarks in advertising infringes on the Amway Registered Trademarks.

17

89.     Defendants' unauthorized sale of products bearing the Amway Registered Trademarks and unauthorized use of the Amway Registered Trademarks in advertising has materially damaged the value of the Amway Registered Trademarks and has caused significant damages to Plaintiffs' business relations.

90.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

91.     Plaintiffs are entitled to recover their damages caused by Defendants' unfair competition and disgorge Defendants' profits from their unlawful sales and unjust enrichment.

92.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

93.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Amway Registered Trademarks.

## COUNT III
### Trademark Dilution
### 15 U.S.C. § 1125(c)

94.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

95.     Products bearing the AMWAY® trademark have been sold to the public since 1959.  For 60 years, Plaintiffs and their predecessor companies have been recognized by consumers as the source of high quality products bearing the AMWAY® trademark, beginning

with cleaning products and expanding to nutrition, beauty, bath and body, cookware, household, and many other types of products.

96.     The AMWAY® trademark was first filed with the United States Patent and Trademark Office in 1960, and was registered in 1961.  Since that time, the AMWAY® trademark has been filed and registered with respect to numerous categories of goods and services.

97.     Alticor owns the Amway Registered Trademarks and has licensed the Amway Registered Trademarks to various subsidiaries, including Amway.

98.     The Amway Registered Trademarks are valid and subsisting trademarks in full force and effect.

99.     Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting products and services under the AMWAY® trademark.  As a result of Plaintiffs' efforts, the AMWAY® trademark is the means by which Amway products and services are distinguished from others in the marketplace.

100.     Plaintiffs market, advertise, and sell products bearing the AMWAY® trademark throughout the United States.

101.     Amway has implemented legitimate and substantial quality controls that it requires all IBOs to follow to protect the Amway name and family of brands.

102.     Consumers throughout the United States recognize and associate the Amway name with quality.

103.     Because of the quality, durability, and dependability of Amway products and Plaintiffs' use of the AMWAY® trademark, consumers trust the Amway name and Amway products.

104.    The AMWAY® trademark is inherently distinctive, and as a result of Plaintiffs' long and continuous use of the AMWAY® trademark, it has acquired a secondary meaning associated by purchasers and the public with Plaintiffs' products and services.

105.    Amway is widely recognized as the designated source of goods bearing the AMWAY® trademark.

106.    For these reasons, since at least 1970, the AMWAY® trademark has been famous, distinctive, and a widely recognized mark by the consuming public.

107.    After the AMWAY® trademark became famous, beginning on or around 2016, Defendants have willfully used the AMWAY® trademark in connection with the unauthorized and illegal sale of products.

108.    Because the products sold by Defendants do not come with the Satisfaction Guarantee and are not subject to and do not abide by Plaintiffs' quality controls, consumers who purchase products from Defendants are more likely to receive a poor quality, damaged, or defective product and have an unsatisfactory customer experience.

109.    Consumers who receive poor quality products that do not come with the Satisfaction Guarantee or customer service provided by IBOs are likely to associate that negative experience with Plaintiffs and the AMWAY® trademark.  As a result Defendants' unauthorized and willful use of the AMWAY® trademark is tarnishing and diluting the value and distinctive quality of the AMWAY® trademark.

110.    Defendants' unlawful actions have harmed the reputation and goodwill associated with the AMWAY® trademark, and Plaintiffs have suffered and will continue to suffer immediate and irreparable injury.  Further, Defendants' actions have harmed and will continue to harm consumers interested in purchasing genuine Amway products.

111.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

112.    Plaintiffs are entitled to recover their damages caused by Defendants' dilution of the AMWAY® Trademark and disgorge Defendants' profits from their unlawful sales and unjust enrichment.

113.    Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

114.    Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Amway Registered Trademarks.

### COUNT IV
### Common Law Trademark Infringement and Unfair Competition

115.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116.    Plaintiffs are the owner and licensee of the Amway Registered Trademarks.

117.    Alticor has registered the Amway Registered Trademarks with the United States Patent and Trademark Office.

118.    The Amway Registered Trademarks are valid and subsisting trademarks in full force and effect.

119.    Defendants have willfully and knowingly used, and continue to use, the Amway Registered Trademarks in commerce for the purpose of selling products on the Internet without Plaintiffs' consent.

120.    The products that Defendants sell bearing the Amway Registered Trademarks are not authorized for sale by Plaintiffs.

121.    Defendants' use of the Amway Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Amway Registered Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs.

122.    Defendants' use of the Amway Registered Trademarks in connection with their sale of Amway products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Amway products.

123.    The products sold by Defendants are not, in fact, genuine and authentic Amway products.   The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to and do not abide by Amway's quality control procedures that IBOs must follow.

124.    Defendants' unauthorized use of the Amway Registered Trademarks has materially damaged the value of the Amway Registered Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Amway Registered Trademarks.

125.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

126.    Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Amway Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

127.    In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

## COUNT V
**Unfair Competition In Violation of Michigan Consumer Protection Act**
**Mich. Comp. Laws §§ 445.901, et seq.**

128.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

129.    Defendants' use of the Amway Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Amway Registered Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs.

130.    Defendants' use of the Amway Registered Trademarks in connection with their sale of Amway products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Amway products.

131.    The products sold by Defendants are not, in fact, genuine and authentic Amway products.  The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to and do not abide by Amway's quality control procedures that IBOs must follow.

132.    Defendants' unauthorized use of the Amway Registered Trademarks has materially damaged the value of the Amway Registered Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Amway Registered Trademarks.

133.    Defendants' actions constitute an unfair or deceptive sales practice as described in Michigan Consumer Protection Act, §§ 445.901, et seq.

134.    In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

## COUNT VI
### Tortious Interference with Existing Contracts

135.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

136.    Plaintiffs sell Amway products to U.S. consumers exclusively through Amway.com and through IBOs.

137.    Amway has entered into contracts with IBOs that prohibit IBOs from selling Amway products to persons or entities that IBOs know, or have reason to know, are going to resell the products on the Internet.

138.    Defendants have sold a high volume of Amway products on the Internet.  The only way Defendants could be obtaining the volume of Amway products they are reselling is by purchasing the products from one or more IBOs for the purpose of reselling them on the Internet.

139.    By purchasing Amway products from IBOs and then reselling them on the Internet, Defendants caused and induced IBOs to breach their contracts with Amway.

140.    Defendants have known that Amway's contracts with IBOs prohibit IBOs from selling Amway products to third parties, such as Defendants, who the IBOs know or have reason to know are going to resell the products on the Internet.

141.    Defendants have known of this prohibition, among other reasons, because Zhou used to be an IBO and agreed to follow the Amway Rules, including the requirement that IBOs may not sell Amway products to persons or entities that IBOs know, or have reason to know, are going to resell the products on the Internet.

142.     Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with Amway's contracts with its IBOs by inducing IBOs to breach their contracts and sell Amway products to Defendants that Defendants resold on the Internet.

143.     Defendants were not justified in their conduct.  Defendants purchased Amway products from IBOs—and in so doing, instigated a breach of the IBOs' contracts with Amway— so that Defendants could unlawfully infringe upon and materially damage the value of the Amway Registered Trademarks by reselling the products on the Internet.

144.     Defendants were not parties to the contracts that they caused IBOs to breach.

145.     Defendants' actions have caused injury to Plaintiffs for which Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

146.     Plaintiffs are entitled to recover punitive damages because Defendants have acted with malice and willful and wanton misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.     Judgment in favor of Plaintiffs and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.     A permanent injunction enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)   Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Amway products,

ii)   Prohibiting the Enjoined Parties from using any of the Amway Registered Trademarks in any manner, including advertising on the Internet,

iii)   Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Amway products as well as any products bearing any of the Amway Registered Trademarks,

iv)   Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Amway Registered Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

v)   Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any Amway products or any of the Amway Registered Trademarks,

vi)   Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the Amway Registered Trademarks which associate Amway products or the Amway Registered Trademarks with the Enjoined Parties or the Enjoined Parties' websites,

vii)   Requiring the Enjoined Parties to take all action to remove the Amway Registered Trademarks from the Internet, including from the websites www.amazon.com and www.ebay.com;

C.   An award of attorneys' fees, costs, and expenses; and

D.   Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 9, 2019

*s/Edward J. Bardelli*
Edward J. Bardelli (P53849)
WARNER NORCROSS + JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503
(616) 752-2165
ebardelli@wnj.com
***Attorneys for Plaintiffs***

018716.175639 #18377079-1